## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **AMGEN INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civ. No. 16-853-MSG** |
| | : | **CONSOLIDATED** |
| **AMNEAL PHARMACEUTICALS LLC,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**Goldberg, J.**                                                               **September 10, 2021**

## <u>MEMORANDUM OPINION</u>

Currently before me are four motions to seal or redact certain trial exhibits that were introduced during a two-day bench trial held in March 2021.  The purpose of the bench trial was to determine the amount of damages, if any, that Piramal and Slate Run should recover from a security bond for wrongful injunction.  This bond was posted by Amgen to secure an injunction pending the appeal of my earlier judgment that Piramal did not infringe Amgen's United States Patent No. 9,375,405 ("the '405 patent").

The motions have been filed by non-party Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., and Actavis Pharma, Inc. (collectively, "Teva") (D.I. 678); non-party Cipla USA, Inc. and Cipla Ltd. (collectively, "Cipla") (D.I. 680); Plaintiff Amgen Inc. ("Amgen") on behalf of non-party Aurobindo Pharma Ltd. and Aurobindo Pharma USA, Inc. (collectively "Aurobindo") (D.I. 681); and Defendant Piramal Healthcare UK Ltd. ("Piramal") and Intervenor Slate Run Pharmaceuticals ("Slate Run," and collectively with Teva, Cipla, Amgen, and Piramal, the "Movants") (D.I. 684).

1

## I.      LEGAL STANDARD

The common law presumes that the public has a right of access to judicial records.  *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 343 (3d Cir. 1986); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir. 1984).  A "judicial record" is a document that "has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001).

To overcome the strong presumption of access, a movant must show that "the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mrktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d. Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994).  The movant seeking closure must make a specific showing on a document-by-document basis.  *Avandia*, 924 F.3d at 677.   "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Cendant*, 260 F.3d at 194.

## II.     DISCUSSION

Movants seek to seal or redact 88 documents comprising over 540 pages.  To organize this large volume of various material, I have grouped the documents into five categories based on the type of information to be redacted or sealed.  Those categories are: financial data, settlement agreements, personal contact information, financial account numbers, and the identity of a Slate Run investor.

### A.  Financial Data

The label "financial data" is used to cover the type of information readily called to mind by such a term – e.g., prices, costs, sales revenue, and profit margins.  But several documents in

this category also mix in redactions of related information that is not quite the equivalent of financial data. This related information includes: product quantity, customer payment terms, and contractual distribution and licensing terms. Because the related information does not readily fit under the label "financial data," it requires a slightly different or extended analysis. Accordingly, I start with analyzing redactions of core financial data and then address the remaining sub-categories. I will also address two data spreadsheets Cipla failed to describe.

### 1. Pricing, Costs, Sales Revenue, and Profit Data

Various Movants have moved to seal or redact the following exhibits because they contain financial data related to pricing, costs, sales revenue, and profit margins:

- **Invoice**. Piramal seeks to redact portions of an invoice showing the costs of goods. (PSR014).

- **Investor Summaries**. Slate Run seeks to redact from summaries prepared for an investor its net sales, costs of goods sold, gross profit, net gross margin, and related amounts. (PTX791, PTX800)

- **Slate Run Data Spreadsheets**. Slate Run seeks to seal PTX670, PTX683, PTX752, PTX785 and redact PSR052, PTX640, which are data spreadsheets it generated in the normal course of business. Specifically, PTX670, PSR052, and PTX640, disclose cinacalcet sales by customer along with contract price, chargeback amounts, rebates, and related financial terms. PTX683 and PTX752 disclose pre-launch forecasts of its projected sales price, net sales, costs of goods sold, royalties, and profits. PTX785 discloses similar information related to pre-launch forecasts of customer sales.

- **Expert Data Spreadsheets**. Slate Run seeks to redact two data spreadsheets prepared by the parties' experts that contain Slate Run's pricing, net profits, rebates and cost of goods sold. (PSR105, PSR107).

- **Slate Run Customer Contracts**. Slate Run seeks to redact product pricing from contracts with Red Oak Sourcing (PSR040, PSR041, PSR042, PSR043, PSR044, PSR045, PSR046, PSR047, PSR049) and an excel spreadsheet summarizing that information (PSR048).[1]

- **Teva Customer Contract**. Teva seeks to seal a one-page contract amendment with Fresenius that provides a pricing adjustment. (PSR068 also submitted as PTX830).

---

[1]    Slate Run also seeks to redact from these contracts the name and contact information of a Red Oak employee. The redaction of that information is discussed separately below.

- **Board Presentations**: Piramal seeks to redact from PowerPoint presentations prepared for its Board of Directors financial forecasts,[2] the estimated dollar value associated with the market activity of specific competitors, the projected profitability for sales to specific customers, and the value of the purchase orders received in anticipation of a launch. (PSR011 also submitted as PTX713,[3] PSR020 also submitted as PTX742, PSR024 also submitted as PTX619, PSR028 also submitted as PTX716,[4] PTX709, PTX720, PTX726, PTX734, PTX736, PTX738, PTX740,  and PTX744).

- **Emails**.  Piramal seeks to redact portions of an email showing the pricing per cinacalcet tablet (PSR100), portions of an email providing the projected profitability of the cinacalcet project (PSR721), and portions of an email providing the estimated product value in preparation for launch (PTX727).

After review of these documents, I conclude that Movants' motions to seal or redact should be granted, with the caveats identified in the footnotes 3 and 4.  Movants have identified a clearly defined and serious injury from disclosing financial data such as pricing, costs, sales revenue, and profit margins.  Disclosure of this information would provide competitors in the pharmaceutical industry with access to confidential and proprietary data from which they could deduce profit margins and adjust their marketing and pricing strategies to weaken the Movant's competitive position in the marketplace.  (D.I. 696 at 1).

Courts have repeatedly protected from disclosure financial data showing pricing, costs, sales revenue, and profits where it could place movants at a competitive disadvantage.  *See*

---

[2]     The financial forecasts primarily contain dollar amounts showing projected earnings before interest, taxes, and depreciation ("EBITDA"), cost of goods sold, inventory costs, supply price, supply margins, estimated sales, estimated profit, potential damages, and related figures.

[3]     Piramal initially sought to redact two additional categories of information from PSR011 (also submitted as PTX713): (1)  the names and titles of certain employees, and (2) its proposed manufacturing and launch schedule.  (D.I. 685).  The first category is addressed below.  For the second category, Piramal has withdrawn the request.  (*See* D.I. 694 ¶ 4; D.I. 697).

[4]     Piramal proposes inconsistent redactions in PSR028 and PTX716, even though they are the same document.  On page 2 of 7, PTX716 redacts the entire second bullet point whereas PSR028 leaves the entire second bullet point unredacted.  Both documents should redact only the dollar amount in the second bullet point.  These changes will not only make PSR028 and PTX716 consistent with each other but also consistent with other exhibits containing the same bullet point. *See*, *e.g.*, PTX713, page 2 of 6 and PTX720, page 2 of 16.

*Cutsforth, Inc. v. Lemm Liquidating Co.*, LLC, 2020 WL 772442, at *1 (W.D. Pa. Feb. 18, 2020) (allowing redactions of "product pricing (such as price differentials, average selling price and discounts), profit margins, [and] costs of manufacturing" because disclosure would "materially harm Plaintiff's negotiating position in the marketplace"); *Boehringer Ingelheim Pharma GmbH & Co. KG v. Mylan Pharms., Inc.*, 2015 WL 4715307, at *2 (D.N.J. Aug. 7, 2015) (sealing "sales and revenue" data because movant's "competitive position in the marketplace would be adversely affected and seriously damaged by disclosure"); *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, 2007 WL 2085350, at *5 (D.N.J. July 18, 2007) (sealing "cost and profit information" to protect movant's "competitiveness in the marketplace").

## 2. Product Quantity

Although some of the documents in this sub-group contain the same financial data discussed above, all of them contain the quantity of product sold, or a percentage market share based on the quantity of product sold. The following documents are at issue:

- **Slate Run Data Spreadsheets**. Slate Run seeks to redact a data spreadsheet generated in the normal course of business that discloses cinacalcet sales by customer with product quantities and pricing. (PSR051).

- **Teva Data Spreadsheets**. Teva seeks to seal data spreadsheets generated in the normal course of business that discloses cinacalcet sales by customer with product quantities and pricing, including any chargebacks or rebates. (PSR066, PSR067).

- **Expert Data Spreadsheets**. Cipla seeks to seal data spreadsheets prepared by the parties' experts that show the quantity of product sold by various manufacturers.[5] (PSR106, PTX656).

- **Expert Data Spreadsheets**. Teva and Cipla seek to seal and Slate Run seeks to redact spreadsheets prepared by the parties' experts that combine Slate Run's pricing with the

---

[5]   Normally, Cipla would not have standing to move to seal information that does not belong to it. But in these circumstances, allowing Cipla to redact only its product quantity would not provide sufficient protection, because anyone could easily deduce the redacted information by subtracting the other manufacturers' product quantity from the total product quantity, which leaves only Cipla's product quantity.

quantity of product sold by either Teva (PSR108, PTX662) or Cipla (PTX658, PTX659, PTX660, PTX661).

After review of these documents, I conclude that Movants' motions to seal or redact should be granted. Movants have persuasively argued that in the pharmaceutical industry disclosure of the quantity of product sold could cause a clearly defined and serious injury. The quantity of product sold to particular customers reveals a Movant's key client base, including the relative demand for the product from each customer. Disclosure would allow competitors to adjust their marketing strategies and target audience to weaken a Movant's relationship with these clients. In addition, disclosure of a Movant's total sales volume could be used by competitors to determine a company's market share.

Courts have protected this type of information from disclosure because it could harm a Movant's position in the marketplace and weaken competition as a whole. *See Cutsforth*, 2020 WL 772442, at *1 (allowing redactions of "number of units sold" along with other financial data); *Genentech, Inc. v. Amgen, Inc.*, 2020 WL 9432700, at *6 (D. Del. Sept. 2, 2020) (recommending continued sealing of information regarding "sales volume" and "anticipated market share and penetration"); *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012) (protecting from disclosure "market share information").

### 3. Customer Payment Terms

Slate Run seeks to redact the payment terms from a customer contract, including the amount of a cash discount given for paying within a set time period. (PSR063, also submitted as PTX694). Although this information is not a set price, it effectively constitutes pricing information because it reveals how Slate Run calculated the ultimate price the customer would pay. Courts have protected this type of information from disclosure. *See Mosaid*, 878 F. Supp. 2d at 511 ("[Contract] terms that relate to pricing, valuation, monetary payments, and financial information

should be protected.").  Accordingly, Slate Run's motion to redact PSR063, also submitted as

PTX694, will be granted.

### 4. License, Manufacturing, and Distribution Terms

Piramal and Slate Run seek to protect from disclosure the contract terms governing their

financial arrangements.  Some of the documents in this sub-group also contain the same core

financial data discussed above (e.g., costs and pricing).  My focus here is only on the disclosure of

certain contract terms.  The following documents fall into this sub-group:

- **Slate Run and Piramal Contracts**.  Slate Run and Piramal seek to redact from their License, Manufacturing and Distribution Agreement and the Fifth Amendment to that agreement contract terms showing what fees are owed to whom at what time, how they define certain financial terms used to calculate those fees, and what share of profits and liabilities each party would incur in certain circumstances.  (PSR078; PTX705).

- **Board Presentation**: Piramal seeks to redact from a PowerPoint presentation prepared for its Board of Directors a summary of the risk sharing terms in its Fifth Amendment to the License, Manufacturing and Distribution Agreement.  (PSR016 at 0009).  Piramal also seeks to redact from this Board Presentation the same financial data provided in the other Board Presentations discussed above.  (*See supra* Section II.A.1).

- **Slate Run PowerPoint Presentation**: Slate Run seeks to redact from a PowerPoint presentation prepared for an investor the amount of the injunction security bond it could receive if the full bond was recovered.[6]  (PTX696 at 7 & 30).  Slate Run also seeks to redact from this document the same type of financial data already deemed worthy of protection, i.e., net sales and gross margins to date, as well as projected lost sales to specific customers, the selling price, costs of goods, and volume of such lost sales, and resulting lost profits, owing to the injunction.  (*See supra* Section II.A.1).

After review of these documents, I conclude that Slate Run and Piramal's motion to redact

should be granted.  As Slate Run contends, if the financial terms at issue are made public, future

business partners would be able to use this information against Slate Run during negotiations.

---

[6]    The bond amount indirectly reveals the contractual profit-sharing terms negotiated and agreed upon by Piramal and Slate Run.  (D.I. 697 at 5).  "[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to recover provable damages up to the bond amount." *Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597, 606-08 (3d Cir. 2019).  Damages in this case would be lost profits.  Accordingly, the bond amount represents money that would be subject to any profit-sharing agreement between Piramal and Slate Run.

(D.I. 697 ¶ 7).   In addition, competitors could negotiate more favorable terms than that of the party whose information is revealed.

Courts have recognized this potential harm and protected from disclosure non-public, negotiated contract terms governing the parties' financial arrangements.   *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 2013 WL 12141532, at *19 (W.D. Pa. Sept. 16, 2013) (protecting from disclosure certain financial contract terms that counterparties could use in future negotiations to their advantage and movant's disadvantage); *Mosaid*, 878 F. Supp. 2d at 511 ("[T]erms that relate to pricing, valuation, monetary payments, and financial information should be protected.").

### 5.  Cipla Data Spreadsheets

 For the following reasons, Cipla's motion to seal PSR069 (also submitted as PTX637) and PSR070 (also submitted as PTX645) will be denied.   The contents of these particular spreadsheets or what purpose they serve is not obvious on its face, and Cipla has not adequately described the nature of these materials in its motion.   (*See* D.I. 680).   Accordingly, I issued an order instructing Cipla to "describe the contents of these documents" and "[p]rovide case law, if any, indicating that courts will keep this type of information under seal."   (D.I. 694 ¶ 3).   Cipla did not respond to that order.

The Third Circuit has instructed that "the District Court must conduct a document-by-document review of the contents of the challenged documents."   *Avandia*, 924 F.3d at 673.   A district court cannot conduct this analysis in a vacuum.   Accordingly, the district court's burden is a movant's burden.   Cipla failed to carry its burden to show that these documents are entitled to protection.

### B.  Settlement Agreements

The motions to seal Amgen's settlement agreements with Teva (PTX616) and Aurobindo (PSR075) will be granted.   Courts protect settlement agreements when public disclosure will reveal

a signatory's "business and litigation strategies to competitors . . . undermining its future bargaining positions." *Volkswagen Grp. of Am., Inc. v. N. Am. Auto. Serv., Inc.*, 2020 WL 9211151, at \*2 (D.N.J. Nov. 30, 2020) (granting motion to seal settlement agreements); *Genentech, Inc. v. Amgen, Inc.*, 2020 WL 9432700, at \*6 (D. Del. Sept. 2, 2020) (recommending continued sealing of settlement agreements because disclosure "could place the parties at a demonstrable disadvantage in navigating and negotiating other litigation contests with competitors in the same pharmaceutical space').

Here, the settlement agreements not only ended the parties' patent-infringement litigation but also granted the settled-defendants a license to Amgen's asserted patent.  Accordingly, the settlement agreements contain the financial terms of an ongoing business relationship.  "[T]erms that relate to pricing, valuation, monetary payments, and financial information should be protected." *Mosaid*, 878 F. Supp. 2d at 511.

The settlement agreements also contain several non-financial terms, such as the names and addresses of the corporate entities subject to the agreement, definitions, notifications, and general provisions governing confidentiality, assignment, choice of law, etc.  I highly doubt that disclosure of these types of boiler plate provisions would cause a clearly defined and serious injury. Nevertheless, I will not require Teva and Aurobindo to engage in the pain-staking process of providing proposed redactions that delineate between confidential negotiated terms and boilerplate, because that burden would be placed on third parties who are not seeking relief from the Court and the documents themselves played no role in deciding the issues in this case.

Specifically, there was no discussion of PSR075 or PTX616 during the trial.  PSR075 is mentioned only once in post-trial briefing and PTX616 is mentioned not at all.  The single mention of PSR075 is a "see also" citation, meaning it is a minor pile-on to a point already established with other evidence.  (*See* D.I. 668 at 11).  And, the Court did not rely on either PSR075 or PTX616 in

rendering its decision.  Accordingly, disclosure of these two settlement agreements is not necessary to provide the public with a "complete understanding of the judicial system and a better perception of its fairness." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988); *see Mosaid*, 878 F. Supp. 2d at 513 ("[C]ourts have recognized that even terms of highly confidential agreements—such as settlement agreements—may need to be disclosed, such as when the parties seek interpretative assistance from the court or otherwise move to enforce a provision of that agreement." (internal punctuation omitted)).

### C.  Name and Contact Information

Piramal and Slate Run seek to redact the names and non-public contact information for the following individuals:

- Piramal employees whose name and responsibilities appeared on organizational chart for the Piramal cinacalcet project but otherwise had no relevance to this dispute.  (PSR011 also submitted as PTX713).

- Employees of a Slate Run customer called Red Oak Sourcing who exchanged emails with Slate Run as part of a sales negotiation.[7]  (PSR035, PSR038, PSR053).

- Employees of Red Oak Sourcing who exchanged contract proposals with Slate Run. (PSR040, PSR041, PSR042, PSR043, PSR044, PSR045, PSR046, PSR047, PSR049)).

After review of these documents, I conclude that Piramal and Slate Run's motion to redact should be granted.  Employees who are either non-parties or not relevant to the dispute have privacy interests that outweigh the public's right to their name and non-public contact information. *See Wartluft v. Milton Hershey School & School Trust*, 2019 WL 5394575, at *7 (M.D. Pa. Oct. 22, 2019) (ordering redaction of names of plaintiff's employees who are not party to the lawsuit

---

[7]     I appreciate the precision upon which Slate Run proposed its redactions.  For example, Slate Run did not propose to redact the business address for Red Oak Sourcing, which is publicly available.

in order to protect their privacy interests).  And, revealing the name and contact information of a party's customers can harm their competitive standing in the marketplace.  *See Telebrands Corp. v. NewMetro Design, LLC*, 2016 WL 9223920, at *1 (D.N.J. Aug. 4, 2016) (granting motion to seal non-public telephone numbers and email addresses belonging to plaintiff's customers or potential customers to prevent harm to plaintiff's competitive standing in the marketplace). Accordingly, this type of information is entitled to protection.

### D.  Financial Account Numbers

I will also grant Slate Run's motion to redact its account number and lockbox number on a billing invoice from its third-party logistics company to avoid such information being fraudulently used by unauthorized third parties.  (PSR034).  A lockbox number is an account with a logistics company to which a pharmaceutical company's customers make payments.[8]  Financial account information, such as bank account numbers, is the kind of information courts will protect because broad disclosure could cause financial injury to the party.  *See Three Brothers Supermarket Inc. v. United States*, 2020 WL 5749942, at *4-5 (E.D. Pa. Sept. 25, 2020).

### E.  Identity of a Slate Run Investor

Slate Run seeks to redact or seal the following exhibits to prevent the disclosure of its Investor's identity:

- Redacting from emails Slate Run exchanged with its Investor only the name and contact information of the Investor.  (PTX676, PTX 784).

- Redacting from emails internal to the Investor's company all but the first email, which is an industry report generated by an outside analytics firm and distributed to the public.  (PTX767, PTX773, PTX774).

- Sealing emails entirely internal to the Investor's company.  (PTX768, PTX769, PTX771, PTX772, PTX775, PTX777, PTX779, PTX782, PTX799).

---

[8]   https://www.cardinalhealth.com/content/dam/corp/web/documents/case-study/cardinalhealth-3pl-title-model-case-study.pdf (last visited July 20, 2021).

- Sealing a report generated by an independent accountant for the Investor. (PTX780).

- Sealing the transcript and video designations from the deposition of the Investor's representative.  (PTX837, PTX838).

Slate Run's motion to redact or seal these trial exhibits will be granted.  These documents are related to a relationship between Slate Run and its Investor based on a loan Slate Run received from the Investor to finance its operations.  (D.I. 687 ¶ 15).  At the same time, the Investor is another company in the pharmaceutical marketplace that plays a role separate and independent from being an investor.  (D.I. 687 ¶ 16).  In other words, the Investor itself has to compete in the pharmaceutical marketplace for its own suppliers and buyers.  Although the Investor does not control Slate Run, it is foreseeable that other companies in the pharmaceutical industry could reach erroneous conclusions regarding the nature of the relationship between Slate Run and its Investor and, as a result, take actions that would prejudice the business interests of Slate Run and/or the Investor.  (*Id*. at ¶¶ 15, 17).  In addition, the Investor itself could foreseeably change or terminate its financial relationship with Slate Run in order to assuage any misplaced concerns by other market participants who learn of the relationship.  (*Id*. at ¶¶ 18-19).  Finally, the identity and role of the Investor have been largely irrelevant to the dispute before the Court.  (*See*, *e.g*., D.I. 624 (adopting Special Master's recommendation that Amgen's motion to compel discovery regarding the Investor be denied as irrelevant)).  For these reasons, Slate Run has overcome the presumption that the public has the right to access these judicial records.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the motions to seal or redact certain trial exhibits filed by Teva, Amgen, and Piramal and Slate Run are granted.  (D.I. 678, D.I. 681, D.I. 684).  The motion to seal filed by Cipla is granted in part and denied in part as detailed above.  (D.I. 680).  An order consistent with this memorandum opinion follows.