IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-853 (MSG) |
| | ) | (CONSOLIDATED) |
| AMNEAL PHARMACEUTICALS LLC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| SLATE RUN PHARMACEUTICALS, LLC, | ) | |
| | ) | |
| Intervenor Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMGEN INC., | ) | |
| | ) | |
| Intervenor Defendant. | ) | |

**PLAINTIFF AMGEN INC.'S MOTION FOR PARTIAL RECONSIDERATION WITH REGARD TO CALCULATION OF PREJUDGMENT INTEREST**

OF COUNSEL:

John D. Murnane
Joshua I. Rothman
Alicia A. Russo
VENABLE LLP
1290 Avenue of the Americas
New York, NY 10104-3800
(212) 218-2100

Wendy A. Whiteford
Drew Diamond
Brian Kao
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

October 18, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Amgen Inc.*

TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND .......................................................................................................... 1

III.  ARGUMENT ............................................................................................................... 3

      A.    The 5.5% Interest Rate Proposed by P/SR is Legally Incorrect ............................ 3

      B.    The Appropriate Rate is the Average Prime Rate of 3.92% .................................. 6

IV.   CONCLUSION ............................................................................................................. 6

i

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*Hologic, Inc. v. Minerva Surgical, Inc.*,
No. 15-1031-JFB, 2019 WL 1958020 (D. Del. May 2, 2019) ................................................... 3

*IIPV Enters., LLC v. EchoStar Commc'ns Corp.*,
No. 99-577-KAJ, 2003 WL 723260 (D. Del. Feb. 27, 2003) ............................................... 3, 5

*IMX, Inc. v. LendingTree, LLC*,
469 F. Supp. 2d 203 (D. Del. 2007) ......................................................................................... 4, 6

*Kaufman Co. v. Lantech, Inc.*,
926 F.2d 1136 (Fed. Cir. 1991) ................................................................................................... 3

*Lazaridis v. Wehmer*,
591 F.3d 666 (3d Cir. 2010) ........................................................................................................ 3

*Mars, Inc. v. Conlux USA Corp.*,
818 F. Supp. 707 (D. Del. 1993) ................................................................................................. 4

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
No. 02-123-KAJ, 2004 WL 1622442 (D. Del. July 12, 2004) ............................................... 4, 6

*TA Instruments, Inc. v. The Perkin-Elmer Corp.*,
277 F. Supp. 2d 367 (D. Del. 2003) ........................................................................................ 4, 6

*Takeda Pharms., U.S.A., Inc. v. West-Ward Pharm. Corp.*,
No. 14-1268-RGA, 2018 WL 6529289 (D. Del. Nov. 12, 2018) ............................................... 5

RULES

D. Del. LR 7.1.5 ............................................................................................................................. 1

## I.     **INTRODUCTION**

Pursuant to D. Del. LR 7.1.5, Plaintiff Amgen Inc. ("Amgen") respectfully seeks partial reconsideration directed to the 5.5% prejudgment interest rate applied in the Court's October 5, 2021 Memorandum Opinion (D.I. 707, "Decision") awarding damages to Defendants Piramal Healthcare UK Ltd. ("Piramal") and Intervenor Slate Run Pharmaceuticals, LLC ("Slate Run") (collectively, "P/SR"). D.I. 707 at 18-19.

For nearly two-thirds of the 30-month relevant period, the prime rate has been 3.25%.  The 5.5% interest rate proposed by P/SR (and adopted by the Court) was simply the rate in place for the first four months of the relevant period (being quickly followed by multiple rate *cuts*). Because this inflated rate does not represent the average prime rate over the relevant period, but is in fact the highest rate over just a fraction of the whole period, it improperly compensates P/SR for harm not suffered and runs afoul of controlling law.

Amgen's expert has calculated the average prime rate over the relevant period to be 3.92%. Amgen respectfully requests that the Court reconsider the legally erroneous 5.5% prejudgment interest rate and instead employ the average prime rate of 3.92%.

## II.    **BACKGROUND**

In the October 5, 2021 Decision, the Court adopted P/SR's proposed interest rate, stating that Amgen did not dispute that the rate should be set at 5.5%, compounding yearly.  D.I. 707 at 18.  But Amgen had no opportunity to address the appropriate prejudgment interest rate, because calculating it before the Court issued its decision would have been premature.

At trial, P/SR presented no evidence to support its proposed 5.5% rate. That was not surprising because P/SR's expert did not provide his opinions on the appropriate amount of interest in his expert reports.  Rather, P/SR's expert "reserve[d] the right to provide an analysis and calculation of prejudgment interest at the appropriate time." *See* Exhibit 1 (Expert Report of Ivan

Hofmann), ¶ 95; Exhibit 2 (Reply Expert Report of Ivan T. Hofmann), ¶ 91.  Indeed, none of the parties presented any expert testimony or argument about what the applicable rate should be, expecting to do so at the appropriate time.

Because prejudgment interest is intended to compensate a party for the loss of use of money between the time damages begin accruing and the Court's Decision, the prejudgment interest rate will depend on the Court's ultimate determination of *which* sales (if any) were lost, *when* each of those sales would have occurred had the injunction not been entered, *when* the Court's Decision issues, and *what prime rates* were in effect over the duration(s) between the lost sales and the Court's decision.

At the Court's direction, the parties filed "simultaneous [post-trial] briefs."  Trial Tr. 245:3-5, 246:9-10; D.I. 668, 669.  In its post-trial brief, P/SR prematurely argued its outsized 5.5% prejudgment interest rate, citing to a JPMorgan Chase & Co. web page listing historical prime rate data.  *See* D.I. 668 at 35, n.15 (citing https://www.jpmorganchase.com/about/our-business/historical-prime-rate).  Notably, that very page showed that the 5.5% prime rate existed for *less than four months of the injunction period*, and *thereafter was reduced five consecutive times* until reaching 3.25% on March 16, 2020 (where it has remained for 19 months).  P/SR could not present any evidence or provide calculations demonstrating how or why the highest prime rate should apply for the entire period, because P/SR had no way of predicting which damages would (and would not) be awarded, nor how rates might have further moved in the time between post-trial briefing and decision.

Without further briefing, Amgen could not then respond to P/SR's attempt to benefit from its proposed windfall rate.  Thus, Amgen now does so here, based on the historical prime rate and

2

the calculations of its expert, Mr. Michael Tate, who has taken into account the pertinent information that was unavailable prior to the Court's decision.

### III.    ARGUMENT

A court may grant a motion for reconsideration on any of three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).  Here, Amgen requests reconsideration of the portion of the Court's Decision awarding prejudgment interest at the 5.5% interest rate proposed by P/SR because it is premised on a clear error of law.

#### A.    The 5.5% Interest Rate Proposed by P/SR is Legally Incorrect

District courts have discretion to determine the calculation of prejudgment interest.  *See, e.g.*, *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991).  "The method used to calculate [the] amount of judgment and prejudgment interest involves matters of law and is based on undisputed facts, and therefore is appropriately resolved by way of a motion to amend judgment."  *Hologic, Inc. v. Minerva Surgical, Inc.*, No. 15-1031-JFB, 2019 WL 1958020, *5 (D. Del. May 2, 2019) (citation omitted), *reversed-in-part on other grounds*, 957 F.3d 1256 (Fed. Cir. 2020). Here, there is an opportunity to correct this error even before judgment.

Judges in this district have repeatedly held that the proper prejudgment interest rate is the *average* prime rate over the relevant period.  *See, e.g.*, *IIPV Enters., LLC v. EchoStar Commc'ns Corp.*, No. 99-577-KAJ, 2003 WL 723260, at *3 (D. Del. Feb. 27, 2003) ("The Court is satisfied that the appropriate prejudgment interest rate should be *an average of the short term prime lending rates* for the period beginning March 1996 and concluding in September 1997, which represents the period that the 'hypothetical' license would have encompassed." (emphasis added)); *TA Instruments, Inc. v. The Perkin-Elmer Corp.*, 277 F. Supp. 2d 367, 380 (D. Del. 2003)

("The court finds that prejudgment interest is properly calculated using *the actual average prime rate* during the damages period." (emphasis added)); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, No. 02-123-KAJ, 2004 WL 1622442, at *2 (D. Del. July 12, 2004) ("I am satisfied that the appropriate prejudgment interest rate should be the *Federal Reserve average prime rate*, compounded annually…." (emphasis added)); *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (applying the "Federal Reserve *average prime rate*" over the relevant period (emphasis added)). This average rate is appropriate because it represents the actual cost of borrowing money over the relevant period, and "[t]he cost of borrowing money ... provides a better measure of the harm [the recovering party] suffered as a result of the loss of the use of money over time." *IMX*, 469 F. Supp. 2d at 227-28 (quoting *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D. Del. 1993)).

By contrast, the 5.5% interest rate proposed by P/SR is *not* the average prime rate over the relevant period, but instead represents the highest single prime rate that existed for only a small portion of the 30-month period. This is evident from the historical prime rate data from P/SR's own cited source for its proposed interest rate, as illustrated in the chart below:



4

*See* https://www.jpmorganchase.com/about/our-business/historical-prime-rate; D.I. 668 at 34-35 (citing the same).

As shown above, following entry of the injunction on April 15, 2019 and the alleged lost sale to Fresenius on April 17, 2019, the prime rate remained at 5.5% for less than four months, and thereafter declined several more times until it reached 3.25% on March 16, 2020. This 3.25% interest rate has remained unchanged since that time, and therefore represents the applicable prime rate for nearly two-thirds of the relevant period.

Determining the average prime rate here is of critical importance, because the rate fell by more than 40% in the intervening time between entry of the injunction and decision. In their post-trial brief, P/SR rely on *Takeda Pharms., U.S.A., Inc. v. West-Ward Pharm. Corp.*, but there is nothing inconsistent between Amgen's approach and *Takeda*. No. 14-1268-RGA, 2018 WL 6529289 (D. Del. Nov. 12, 2018); D.I. 668 at 34-35. In *Takeda*, the court applied the specific prime rate that existed on the date the injunction was entered. However, unlike here, the prime rate in *Takeda* remained at 3.25% during the entirety of the relevant period, and therefore there was no reason to calculate an "average" rate. *See id.*, 2018 WL 6529289, at \*6-7; https://www.jpmorganchase.com/about/our-business/historical-prime-rate (showing no change in the 3.25% prime rate from October 2014 to January 2015)).

Thus, P/SR's proposed rate significantly inflates the applicable interest rate and does not represent the "cost of borrowing money" over a period where the prime rate sunk to its lowest levels since the Great Recession. *See IIPV*, 2003 WL 723260, \*3. This is particularly true in view of the 19 months that have passed since the prime rate was lowered to its current 3.25%. Applying P/SR's proposed rate results in additional damages untethered to any alleged lost sale or appropriately accrued interest. Consequently, application of that rate to the Court's lost profits

award would result in a clear error of law. *See id.*; *TA Instruments*, 277 F. Supp. 2d at 380; *Philips*, 2004 WL 1622442, at *2; *IMX*, 469 F. Supp. 2d at 227.

## B.    The Appropriate Rate is the Average Prime Rate of 3.92%

Unlike P/SR's unsupported and improper proposed interest rate, Amgen requests consideration, in accordance with the prevailing law in this district, of the prejudgment average prime interest rate of 3.92%, which has been calculated by Amgen's expert, Mr. Tate, in the accompanying declaration. *See* Exhibit 3, October 18, 2021 Declaration of Michael E. Tate, ¶ 11. Mr. Tate also calculated the cumulative prejudgment interest of $2,919,146 and the total damages award of $31,620,318 by applying the average prime interest rate, compounding yearly. *See id.*, ¶ 12.

## IV.    CONCLUSION

Amgen requests that the Court revise its October 5, 2021 Memorandum Opinion to hold that the prejudgment interest rate to be applied is the average prime rate over the relevant period of 3.92%, compounded yearly.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Amgen Inc.*

OF COUNSEL:

John D. Murnane
Joshua I. Rothman
Alicia A. Russo
VENABLE LLP
1290 Avenue of the Americas
New York, NY 10104-3800
(212) 218-2100

Wendy A. Whiteford
Drew Diamond
Brian Kao
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

October 18, 2021

## RULE 7.1.1 CERTIFICATE

I hereby certify that the subject of the foregoing motion has been discussed with counsel for the defendant and that we have not been able to reach agreement.

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 18, 2021, upon the following in the manner indicated:

| | |
|---|---|
| John C. Phillips, Jr., Esquire<br>David A. Bilson, Esquire<br>PHILLIPS, MCLAUGHLIN & HALL, P.A.<br>1200 North Broom Street<br>Wilmington, DE  19806<br>*Attorneys for Defendant Piramal Healthcare UK Limited and Intervenor Slate Run Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Aaron F. Barkoff, Esquire<br>Alejandro Menchaca, Esquire<br>Rajendra A. Chiplunkar, Esquire<br>Ben J. Mahon, Esquire<br>MCANDREWS, HELD & MALLOY, LTD.<br>500 West Madison Street, 34th Floor<br>Chicago, IL  60661<br>*Attorneys for Defendant Piramal Healthcare UK Limited* | *VIA ELECTRONIC MAIL* |
| Holly D. Kozlowski, Esquire<br>Christopher J. Dutton, Esquire<br>PORTER WRIGHT MORRIS & ARTHUR, LLP<br>5250 East Fifth Street, Suite 2200<br>Cincinnati, OH  45202<br>*Attorneys for Intervenor Slate Run Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)